UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAMELA A. SCHANCK,

                Plaintiff,                CIVIL ACTION NO. 12-14837

v.                             MAGISTRATE JUDGE MARK A. RANDON

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING THE COMMISIONER'S MOTION FOR SUMMARY JUDGMENT (DKT. NOS. 9, 13)

### I.    PROCEDURAL HISTORY

Plaintiff Pamela A. Schanck challenges the Commissioner of Social Security's ("the Commissioner") final denial of her benefits application. Cross motions for summary judgment are pending (Dkt. Nos. 9, 13). The parties have consented to this Magistrate Judge's jurisdiction to decide the motions and enter final judgment (Dkt. Nos. 8, 10). Because the Administrative Law Judge ("ALJ") did not err in his assessment of medical opinion evidence or his hypothetical to the VE, Plaintiff's motion for summary judgment is **DENIED**, Defendant's motion for summary judgment is **GRANTED**, and the Commissioner's findings are **AFFIRMED**.

II.     **GOVERNING LAW**

A.  *Framework for Disability Determinations*

Under the Social Security Act (the "Act"), Disability Insurance Benefits and Supplemental Security Income are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI). The Act has promulgated regulations that provide for the payment of disabled child's insurance benefits if the claimant is 18 years old or older and has a disability that began before attaining age 22. *See* 20 C.F.R. 404.350(a)(5).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the

-2-

regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of HHS*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B. Standard of Review

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited such that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses") (internal quotation marks omitted).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion"); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party") (internal quotation marks omitted). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499

F.3d at 509; *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant").

## III.    ANALYSIS

### A.  *Administrative Proceedings*

Plaintiff applied for disability insurance benefits and supplemental security income on May 15, 2008, alleging a disability onset date of June 4, 2004; the Commissioner denied the application (Tr. 19). Plaintiff appeared with counsel for a hearing before ALJ Andrew G. Sloss, who considered the case *de novo* (*Id.*). In a written decision, ALJ Sloss found Plaintiff was not disabled (Tr. 19-26). Plaintiff requested an Appeals Council review (Tr. 14-15). On August 27, 2012, the ALJ's findings became the Commissioner's final administrative decision when the Appeals Council declined further review (Tr. 1-6).

### B.  *ALJ Findings*

Plaintiff has a high school education and was 42 years old on her alleged disability onset date (Tr. 24). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that she had not engaged in substantial gainful activity since her alleged onset date in 2004 (Tr. 21).

At step two, the ALJ found that Plaintiff had the following "severe" impairment: depression (*Id.*).

At step three, the ALJ found no evidence that Plaintiff's impairments met or medically equaled one of the listings in the regulations (Tr. 22).

Between steps three and four, the ALJ found Plaintiff had the Residual Functional Capacity ("RFC") to perform:

> a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can perform simple, one- and two-step tasks, and must work in small, familiar groups.

(Tr. 23).

At step four, the ALJ found that Plaintiff had no past relevant work (Tr. 24).

At step five, the ALJ found Plaintiff was not disabled, because she could perform a significant number of jobs in the national economy, such as hand packer, inspector, or assembler (Tr. 25).

### C.  Administrative Record

#### 1.        Plaintiff's Hearing Testimony[1]

Plaintiff stopped working in 2003 when she was terminated from her job (Tr. 38-39). On June 4, 2004, a tree came crashing down on Plaintiff's mobile home, leaving Plaintiff and her daughters homeless (Tr. 35).

Plaintiff can no longer work: she is tired, confused, sad, and sick (*Id.*). She seeks regular counseling and takes medications, but finds this only somewhat helpful because she remains

---

[1] Testimony before the ALJ reflects Plaintiff's subjective view of her medical condition, abilities, and limitations; it is not a factual finding of the ALJ or this Magistrate Judge.

homeless (Tr. 35-36). She has difficulty making decisions, becomes confused easily, and has trouble remembering simple things (such as what day it is) (Tr. 37-38).

Plaintiff and her daughter live with Plaintiff's friend (Tr. 36). Plaintiff typically does not do any chores; if she cooks, she often uses a microwave (*Id*.). She recently attended her grandson's baptism (her daughter took her), but typically does not feel like getting up or socializing (Tr. 36-37). Plaintiff spends most of her day sleeping (Tr. 36). She cannot read or watch television or movies; she has trouble focusing (Tr. 36-37).

## 2.        Vocational Expert Testimony

The ALJ asked a Vocational Expert ("VE") to assume a hypothetical individual of Plaintiff's age, education, and past work experience, who had no physical limitations, but who was limited to one- and two-step tasks, in small, familiar groups (Tr. 40). The VE testified that such an individual could perform light, unskilled work as a hand packer, inspector, or assembler (*Id*.).

The ALJ then asked the VE to assume that the individual, due to her psychological condition, was unable to engage in sustained work activity on a regular and continuing basis for eight hours a day, five days a week, or an equivalent work schedule (Tr. 40-41). The VE testified that such an individual would be precluded from competitive work (Tr. 41).

Plaintiff's counsel next posed a series of hypotheticals to the VE (*Id*.). The VE testified that pertinent employers would allow one absence per month, and no more than eight absences in twelve months (*Id*.). Counsel then asked the VE to assume that the individual's concentration

was impacted or deficient such that 20 percent of the time, or one day a week, the individual was nonproductive because they were off task; the VE testified that such an individual would be precluded from competitive work (Tr. 41-42). The VE continued: an individual would also be precluded from competitive work if – for 20 percent of the time, or one day a week – the individual was unable to maintain regular attendance; be punctual within customary tolerances; or complete a normal workday or workweek without interruptions from psychologically-based symptoms (Tr. 42)

### D. Plaintiff's Claims of Error

#### 1.     Medical Opinion Evidence[2]

##### a.  Cliff Eppert, MA, LPC

On April 11, 2011, Cliff Eppert, MA, LPC ("Counselor Eppert"), completed a mental medical source statement (Tr. 467). He diagnosed major depressive disorder, recurrent, unspecified and opined that Plaintiff was moderately limited in her ability to relate and interact with supervisors and co-workers; understand, remember and carry out an extensive variety of technical and/or complex job instructions; understand, remember and carry out simple one- or

---

[2] Plaintiff also argues that the ALJ neglected to consider the mental medical source statement provided by Catholic Family Service Counseling ("CFSC") (Dkt. No. 9 at p. 19 (CM/ECF), citing Tr. 432-61). But what Plaintiff refers to are treatment notes from CFSC, none of which include an opinion regarding Plaintiff's functional abilities. The ALJ did discuss Plaintiff's treatment with CFSC, accurately noting – among other things – that Plaintiff had made moderate gains in all goals in 2005 and slight improvements in 2008 and 2009, but her progress was limited by "ruminating about her past" (Tr. 22).

two- step job instructions; deal with the public; and handle funds (*Id*.). Counselor Eppert also opined that Plaintiff was markedly limited in her ability to maintain concentration and attention for at least two hour increments and withstand the stress and pressures associated with an eight-hour workday and day-to-day work activity (*Id*.).

The ALJ did not mention Counselor Eppert's opinion. Plaintiff argues that the ALJ's failure to mention the opinion constitutes reversible error because it reflects misapplication of the treating source rule, which requires the ALJ to give "good reasons" for the weight assigned to the opinions of treating sources. *See* 20 C.F.R. § 416.927(d); *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 376 (6th Cir. 2013) reh'g denied (May 2, 2013). In support of her argument that the treating source rule applies, Plaintiff cursorily refers to the longevity of her treatment with Catholic Family Service Counseling ("CFSC") (Dkt. No. 9 at p. 20).[3]

Defendant, however, argues that the treating source rule is not applicable here for two reasons.

First, that Counselor Eppert is a therapist – an "other source" under the regulations – and therefore not within the applicable parameters of the treating source rule, which is typically reserved for evaluating the opinions of acceptable medical sources. *See* 20 C.F.R. § 404.1502.

---

[3] All page numbers refer to CM/ECF pagination.

Indeed, licensed professional counselors ("LPC") such as Counselor Eppert are typically considered other sources. *See* 20 C.F.R. §§ 404.1513(d)(1),[4] 404.1527(b).

The regulations do not address how to assign weight to opinions from other sources who directly address the severity of a claimant's impairment or its effect on her ability to work. 20 C.F.R. § 404.1513(d). However, Social Security Ruling 06–03p, which the ALJ cited in his decision, does address the issue: when considering opinions of "other sources," an ALJ "should explain the weight given to [them] or otherwise ensure that the discussion of the evidence in the determination of a decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning when such opinions may have an effect on the outcome of the case." SSR 06-3p. As such, "opinions from non-medical sources who have seen the claimant in their professional capacity should be evaluated by using the applicable factors [in 20 C.F.R. §§ 404.1527(d) and 416.927(d)], including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (citing *Martin v. Barnhart,* 470 F.Supp.2d 1324, 1328-29 (D. Utah 2006) (citing SSR 06–03p, 2006 WL 2329939, at **5-6)); *Lear v. Astrue,* CIV.A.4:08CV00077EHJ, 2009 WL 928371 (W.D. Ky. Apr. 3, 2009).

---

[4] "In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include, but are not limited to[:] . . . [m]edical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists)[.]" 20 C.F.R. § 404.1513.

-10-

Thus, in some cases, other sources may be entitled to special consideration due to their expertise and treatment relationship with patients. *See* SSR 06-03p, 2006 WL 2329939 (S.S.A.), at *4 ("Opinions from these medical sources who are not technically deemed 'acceptable medical sources,' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other evidence in the file."); *see also* *Cole v. Astrue*, 661 F.3d 931, 939 fn. 4 (6th Cir. 2011) ("The practical realities of treatment for those seeking disability benefits underscores the importance of addressing the opinion of a mental health counselor as a valid 'other source' providing ongoing care.").

But this is no such case. Defendant's second point – that Counselor Eppert never established a treatment relationship with Plaintiff in the first place – places further doubt on Plaintiff's proposition that the ALJ erred in failing to apply the treating source rule to Counselor Eppert: treatment notes from CFSC indicate that Bill Relman – not Counselor Eppert – was Plaintiff's therapist. And although Counselor Eppert is apparently affiliated with CFSC, his name appears nowhere else on record (Tr. 35-36).

Even assuming that Counselor Eppert would qualify for special consideration under the pertinent regulations, there is no per se rule that requires an ALJ to articulate each of the six regulatory factors listed in 20 C.F.R. § 404.1527(c) (2)-(6). *Norris v. Comm'r,* No. 11–11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r,* 394 F. App'x 216, 222 (6th Cir. 2010)). An ALJ's failure to discuss the factors listed in § 1527(c)(2)-(6) may constitute harmless error if – among other possibilities – "a treating source's opinion is so

-11-

patently deficient that the Commissioner could not possibly credit it." *Nelson v. Comm'r,* 195 F. App'x 462, 470 (6th Cir. 2006) (citing *Wilson v. Comm'r,* 378 F.3d 541, 547 (6th Cir. 2004)). "An opinion may be patently deficient if the treating source offers no explanation to support it." *Fleming v. Comm'r,* No. 10–25, 2011 WL 3049146, at *9 (E.D. Tenn. July 5, 2011) (citing *May v. Astrue,* 09–00090, 2009 WL 4716033, at *8 (S.D. Ohio Dec. 9, 2009) (finding a treating source opinion patently deficient where the treating source simply checked boxes about the plaintiff's alleged disability and failed to provide supporting explanations or objective evidence)."

Simply put, evidence of any longitudinal treatment relationship between Plaintiff and Counselor Eppert is wholly lacking. There is no evidence to show, for instance, the nature, frequency, or duration of Counselor Eppert's treatment relationship with Plaintiff, let alone the methods by or reasons for which Counselor Eppert arrived at his opinion (Tr. 467). The 2011 mental medical source statement form is the only evidence on record associated with Counselor Eppert, and it contains no elaboration beyond his selection of discrete functional categories (Tr. 467). *See* 20 C.F.R. § 404.1527 (c)(3) ("[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion"). An ALJ cannot elaborate upon relevant factors for which no evidence exists, and remand cannot cure such a defect. *See Wilson*, 378 F.3d at 547 *(*citing *NLRB v. Wyman–Gordon,* 394 U.S. 759, 766 n. 6 (1969) (plurality opinion) (where "remand would be an

-12-

idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game")).

Nor does the ALJ's failure to explicitly discuss Counselor Eppert's opinion mean that he did not consider it. Notably, the ALJ indicated that he considered opinion evidence in accordance with various pertinent regulations, including SSR 06-03p (Tr. 23). And "[w]hile it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each [] opinion, it is well settled that: '[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" *Kornecky*, 167 F. App'x at 507 (internal citation omitted). "The fundamental question . . . is whether the ALJ's decision is supported by substantial evidence." *Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 468 (6th Cir. 2004). Because it is, the ALJ's error – if any – is harmless.

### b.  Joe DeLoach, Ph.D.

On September 8, 2008, Joe DeLoach, Ph.D., completed a mental RFC assessment (Tr. 385-87). He opined that Plaintiff was moderately limited in the ability to understand and remember detailed instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically

based symptoms; and perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 385-86).

Plaintiff argues that the ALJ erred in failing to mention Dr. DeLoach's opinion. Her argument lacks merit. Although the ALJ did not explicitly assign it any particular weight, he made clear that his RFC incorporated Dr. DeLoach's opinion:

> The evidence supports the state agency residual functional capacity. The mental health notes indicate some persistent depressive symptoms, but nothing indicating greater limitations than reflected in the RFC.

(Tr. 24). The ALJ then elaborated on the RFC's consistency with the record as a whole:

> In her medical records, [Plaintiff] does not reflect severe symptomology – "awake, alert, pleasant and cooperative," though "mildly distressed. [sic] She is able to engage in essentially typical daily function. . . . She has not required hospitalization for any physical or mental difficulties. She obtains adequate relief from prescribed medications when taken. The medical record contains no significant complaints of medication side effects or ineffectiveness that might reasonably prevent her from completing an eight-hour workday. Although she has complained of problems with concentration and memory, she has been found to be alert and in no acute distress. No physicians report any basis to find limitation in her daily activities.

(Tr. 24).

Moreover, the ALJ was reasonable in adopting the opinion of Dr. DeLoach when formulating Plaintiff's RFC. Dr. DeLoach did not – unlike Counselor Eppert – limit his opinion to indicating the categorical severity of Plaintiff's limitations; Dr. DeLoach elaborated on the individualized functional effects of Plaintiff's limitations. He explained that ADL forms indicated that Plaintiff was capable of simple one- and two- step tasks; Plaintiff's psychological limitations did not appear to interfere with the potential for work activities that were simple in

-14-

nature; and Plaintiff would function more effectively in small, familiar groups or working alone (Tr. 387). Dr. DeLoach then concluded that Plaintiff retained the capacity to perform simple tasks on a sustained basis (*Id.*). Dr. DeLoach also completed a psychiatric review technique in which he opined that Plaintiff was mildly limited in her activities of daily living; and moderately limited in maintaining social functioning and concentration, persistence, or pace (Tr. 417).

Contrary to Plaintiff's proposition, then, a careful review of Dr. DeLoach's mental RFC assessment reveals that the ALJ did consider it: the ALJ's RFC – which limited Plaintiff to simple, one- and two- step tasks in small, familiar groups – mirrors the findings of Dr. DeLoach (Tr. 23).

### 2.        Hypothetical to the VE

Lastly, Plaintiff argues that the ALJ's RFC – and, consequently, his hypothetical to the VE – failed to adequately accommodate her moderate limitations in maintaining concentration, persistence, or pace.

"In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d. 504, 516 (6th Cir. 2010). There is relevant authority ordering remand where an ALJ's hypothetical does not include a specific reference to moderate limitations in concentration or pace and only limits the hypothetical individual to unskilled work

-15-

or simple, routine tasks.[5] However, there is also authority that has found that an ALJ formed an

accurate hypothetical by limiting the claimant to unskilled work or one- or two- step tasks and

omitting a moderate concentration or pace limitation.[6]  In analyzing the case law, this Magistrate

---

[5] *See*, *e.g.*, *Benton v. Comm'r of Soc Sec.*, 511 F.Supp.2d 842, 849 (E.D. Mich. 2007)
("Here, the ALJ found that although Plaintiff has a moderate deficiency in her ability to maintain
concentration, persistence, and pace, she is able to perform simple, routine, repetitive work.
However, the limitations included in the hypothetical question and the VE's testimony regarding
the effect a lack of concentration has on the jobs mentioned was insufficient to suitably
accommodate Plaintiff's concentration limitations"); *Green v. Comm'r of Soc. Sec.*, No. 08-
11398, 2009 WL 2365557, at *10 (E.D. Mich. July 28, 2009) ("In the present case, while finding
that Plaintiff is 'moderately limited with concentration, persistence, and pace,' [the ALJ's] only
limitations were with co-workers and the public, and to 'unskilled, light jobs.'  These parameters
are not sufficient, and do not fully convey Plaintiff's limitations in concentration to the VE.
Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at an
unskilled job" (internal citations omitted)); *Long v. Comm'r of Soc. Sec.*, No. 09-14227, 2010
WL 6413317, at *7 (E.D. Mich. Dec. 6, 2010) ("In the present case, the ALJ gave Plaintiff the
mental limitation for 'simple unskilled work.' However, the ALJ also determined that 'with
regard to concentration, persistence or pace, [Plaintiff] has moderate difficulties.' The ALJ did
not incorporate [that] limitation … into the controlling hypothetical. This was error." (internal
citations omitted)); *Perkins v Comm'r Soc. Sec.*, No. 10-10089, 2010 WL 5634379, at *9 (E.D.
Mich. Dec. 14, 2010) (same); *Thomczek v. Chater*, 1996 WL 426247, at **2-3 (E.D. Mich. Jan.
5, 1996)

[6]*See, e.g.*, *Hess v Comm'r of Soc. Sec.*, No. 07-13138, 2008 WL 2478325, at **7-8 (E.D.
Mich. June 16, 2008) ("Taken in isolation, the hypothetical limitations consisting of '[s]imple
routine tasks in a low stress environment' and 'minimal changes in the work place setting' might
appear inadequate to account for 'moderate' concentrational and pacing deficiencies. However,
the record as a whole indicated that the hypothetical question and the ALJ's finding of 'moderate'
limitations . . . are not incompatible"); *Latare v. Comm'r of Soc. Sec.*, No. 08-13022, 2009 WL
1044836, at *3 (E.D. Mich. April 20, 2009) ("The [ALJ]'s hypothetical question to the
Vocational Expert accurately described Plaintiff's moderate limitations caused by her depressive
disorder. There is no merit to Plaintiff's argument that the ALJ should have included a limitation
that she had moderate limitations in maintaining concentration, persistence or pace. Unskilled
work, by definition, is limited to understanding, remembering and carrying out only simple
instructions and requiring little, if any, judgment"); *Lewicki v Comm'r of Soc. Sec.*, No. 09-
11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010); *Sutherlin v. Comm'r of Soc. Sec.*,

-16-

Judge agrees that a hypothetical limiting a claimant to simple, routine tasks or one- and two-step tasks may, in some instances, fail to capture a claimant's moderate limitation in concentration, persistence, or pace, because the difficulty of a task does not always equate with the difficulty of staying on task. *See e.g., Green v Comm'r of Soc. Sec.*, No. 08-11398, 2009 WL 2365557, at *10 (E.D. Mich. July 28, 2009) ("It is difficult to reasonably accept 'moderate' meaning anything less than 20%-30% of the time at work. Thus, 'moderate' concentration problems . . . need to be included or accommodated in some suitable fashion in the hypothetical question at Step 5 of that sequence. Simply including the hypothetical of unskilled jobs with limited contact with co-workers and the public is not sufficient"); *Edwards v. Barnhart*, 383 F.Supp.2d 920, 930 (E.D. Mich. 2005) ("Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job").

However, there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of "unskilled work" or "one- and two-step tasks," but excludes a moderate limitation in concentration. Rather, this Court must look to the record as a whole and determine if substantial evidence supports the ALJ's RFC. *See Hess v. Comm'r of Soc. Sec.*, No. 07-13138, 2008 WL 2478325, at *7 (E.D. Mich. June 16, 2008); *see also Sutherlin v. Comm'r of Soc. Sec.*, No. 10-10540, 2011 WL 500212, at *2 (E.D. Mich. Feb. 8, 2011) ("[T]he [ALJ] was not required to incorporate the broad terminology of the [moderate concentration, persistence, or limitations]

_____

No. 10–10540, 2011 WL 500212, at *3 (E.D. Mich. Feb. 8, 2011) ("The hypothetical question that was presented to the vocational expert [omitting moderate concentration, persistence, or pace limitations] properly accommodated [Plaintiff]'s moderate limitation in concentration, pace, and persistence because it accurately described the effect of this limitation in concrete terms).

-17-

verbatim. Rather, as required, the [ALJ] carefully considered and evaluated the credibility of all the relevant evidence when making the [RFC] determination and transforming [Plaintiff]'s restrictions into concrete terms").

In *Hess* – a case representative of the evaluative process utilized in this District – the state agency doctor found that the claimant suffered moderate concentration, persistence, or pace limitations, such that the claimant had limitations in performing at a consistent pace. *Id*. However, the doctor ultimately concluded that the claimant retained the ability to perform unskilled tasks on a sustained basis. *Hess*, 2008 WL 2478325, at *4. The court concluded that because the ALJ relied on the state doctor's finding of a moderate concentration, persistence, or pace impairment, it was reasonable for the ALJ to also rely on that doctor's ultimate conclusion that the claimant could perform unskilled work on a sustained basis, and, accordingly, to omit a concentration-based limitation from the hypothetical. *Id*. at *8. The court continued: "[l]ikewise, Dr. Marshall's observation that Plaintiff experienced a moderately impaired ability to be punctual and complete her work without psychologically based interruptions must be analyzed alongside his conclusion that Plaintiff was capable of a limited range of work." *Id*.; *see also*

Similarly, in *Sutherlin*, the state agency doctor found that the claimant suffered moderate difficulty in maintaining concentration, persistence, or pace. *See Sutherlin*, 2011 WL 500212, at *3. However, the doctor, whose opinion the ALJ accorded great weight, ultimately concluded that the claimant retained the ability to perform one- to two-step tasks on a sustained basis. *Id*. The court in *Sutherlin* found that the hypothetical was sufficient because it described the effect of

-18-

the limitation in concrete terms, namely: (1) minimal contact with the public; (2) able to work in proximity to, but not collaboratively with, other people; (3) limited to one- to two-step work tasks; and (4) may climb ramps—but not ladders—occasionally. *Id*. at **1, 3.

There is no dispute that Plaintiff has moderate limitations in concentration, persistence, or pace: the ALJ accommodated for such limitations in his RFC – and, as a result, his hypothetical to the VE – after evaluating all record evidence. As explained above, here, the ALJ reasonably relied on the findings of Dr. DeLoach, who ultimately concluded that Plaintiff retained the capacity to perform simple, one- and two-step tasks on a sustained basis (Tr. 24, 385-87). Unlike some authority relied upon by Plaintiff, the ALJ's RFC did not misrepresent the findings of Dr. DeLoach, and Dr. DeLoach did not conclude that Plaintiff's limitations necessitated additional accommodations for persistence or pace. *See Ealy*, 594 F.3d at 509, 517 (The Sixth Circuit remanded where the ALJ agreed with a state agency non-examining psychological consultant's assessment, but failed to include all of the assessed limitations in the hypothetical question. The ALJ's hypothetical limiting the claimant to "simple, repetitive tasks and instructions in non-public work settings" impermissibly omitted – and therefore unfairly misrepresented – the consultant's opinion that Plaintiff retained the mental ability to "sustain attention to complete simple repetitive tasks for two-hour segments over an eight-hour day where speed was not critical."). Instead, consistent with other authority that Plaintiff relies upon, "[t]he ALJ [] translated [Plaintiff]'s condition into the only concrete restrictions available to him – [Dr. DeLoach's recommended restrictions] – and duly incorporated them into his hypothetical to the

-19-

vocational expert." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).

Moreover, in making his determination, the ALJ provided a thorough discussion of other record evidence. For example, he discussed CFSC treatment notes – which indicated Plaintiff's moderate or slight improvements while attending counseling sessions in 2005, 2006, 2008, and 2009 – as well as the findings of Mark Zaroff, Ph.D., LP (Tr. 21-22, 24). On August 22, 2008, Dr. Zaroff completed a consultative psychiatric evaluation of Plaintiff: Plaintiff had logical, organized, and goal directed thoughts; denied suicidal ideation; was oriented to person, place, and time; could recall five digits forward and three in reverse; and recalled three of three objects after three minutes (Tr. 22, 380-84). Dr. Zaroff stated that Plaintiff "gave the overall impression that she exaggerates her symptomatology," and opined that "[a] large part of [Plaintiff's] case appear[ed] to be motivated by secondary gain, especially regarding [her] somatic complaints [–] the psychological distress seem[ed] to be at most an extension of that" (Tr. 382, 384).

And although Plaintiff lists segments of her brief testimony in order to demonstrate her difficulties with concentration, the ALJ expressly considered her testimony in his written opinion, and discounted the credibility of her reported symptoms (Tr. 24). Notably, Plaintiff does not contest the ALJ's credibility finding.

As in *Sutherlin* and *Hess*, this Magistrate Judge believes that the ALJ's finding of moderate limitations in concentration, persistence, or pace has to be considered in conjunction with the record and Dr. DeLoach's broader conclusions, which indicate that Plaintiff could successfully perform one- and two-step tasks on a sustained basis without additional explicit

-20-

persistence or pace limitations. As such, the ALJ's hypothetical to the VE adequately accounted for Plaintiff's limitations in concentration, persistence, or pace. His findings are supported by substantial evidence and should not be disturbed on appeal.

**IV.     CONCLUSION**

Because the ALJ did not err in his assessment of medical opinion evidence or his hypothetical to the VE, Plaintiff's motion for summary judgment is **DENIED**, Defendant's motion for summary judgment is **GRANTED**, and the Commissioner's findings are **AFFIRMED**.

**IT IS ORDERED.**

<u>s/Mark A. Randon</u>
Mark A. Randon
United States Magistrate Judge

Dated:  March 31, 2014

<u>*Certificate of Service*</u>

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, March 31, 2014, by electronic and/or ordinary mail.*

<u>*s/Felicia Moses*</u>
*Acting Case Manager for Magistrate Judge Mark A. Randon*

-21-